# NO. 12-20-00051-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| ***BROOKE ALLISON CARROLL,*** ***APPELLANT*** | *§* | *APPEAL FROM THE 7TH* |
| ***V.*** | *§* | *JUDICIAL DISTRICT COURT* |
| ***THE STATE OF TEXAS,*** ***APPELLEE*** | *§* | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Brooke Allison Carroll appeals her conviction for possession of a controlled substance. In three issues, Appellant challenges the validity of the judgment revoking community supervision, the accuracy of her time served credit, and the constitutionality of her court costs. We vacate the judgment revoking community supervision, reinstate the order of deferred adjudication, and remand the case to the trial court.

### BACKGROUND

Appellant was charged by indictment with possession of methamphetamine in an amount less than one gram. On December 3, 2018, pursuant to a plea bargain agreement with the State, she pleaded "guilty," and the trial court deferred a finding of guilt and ordered a presentence investigation report (PSI). On January 11, 2019, a sentencing hearing was held. The trial court stated that it would follow the plea agreement, found the evidence sufficient to find Appellant guilty, deferred a finding of guilt, placed Appellant on community supervision for a term of three years, and ordered her to reimburse the Texas Department of Public Safety (DPS) $180.00 for laboratory testing.

Later that day, a community supervision officer reported to the trial court that Appellant admitted consuming alcohol the previous day. On January 24, 2019, a status hearing was held

on the matter. At the hearing, the court asserted that Appellant's PSI[1] indicated she last used alcohol in November 2018 and that Appellant swore under oath the PSI was accurate. As a result, the trial court stated that it was granting a new trial and withdrawing its plea agreement approval. The State then offered Appellant alternate sentences of a two-year state jail sentence suspended for a term of four years and a $180.00 DPS reimbursement or a seven-month state jail sentence. Appellant chose the suspended sentence with regular community supervision.

Subsequently, the State filed a motion to revoke Appellant's regular community supervision based on allegations that she failed to report to her community supervision officer, perform community service restitution, and attend an individual counseling treatment program. After a hearing on the motion, the trial court found that the State met its burden of proving all the allegations, granted the motion to revoke, imposed the two-year state jail sentence, and ordered Appellant to pay the remaining $90.00 of the DPS reimbursement. This appeal followed.

## VOID JUDGMENT

In Appellant's first issue, she argues that the trial court's judgment revoking her community supervision is void because the trial court lacked authority to grant a new trial sua sponte.

### Standard of Review and Applicable Law

"*New trial* means the rehearing of a criminal action after the trial court has, on the defendant's motion, set aside a finding or verdict of guilt." TEX. R. APP. P. 21.1(a). A motion for new trial in a criminal case may be granted only on the timely motion of the defendant, and the trial court has no authority to grant a new trial on its own motion. *Zaragosa v. State*, 588 S.W.2d 322, 326-27 (Tex. Crim. App. [Panel Op.] 1979). A trial court's grant of its own motion for new trial is a void act or nullity. *Perkins v. Court of Appeals for Third Supreme Judicial District of Texas, at Austin*, 738 S.W.2d 276, 280-81 (Tex. Crim. App. 1987). A new trial granted on a trial court's own motion and any resulting conviction are nullities. *See Zaragosa*, 588 S.W.2d at 327.

### Analysis

Appellant argues that the trial court's lack of authority to sua sponte order a new trial renders her subsequent conviction and sentence nullities. Consequently, she argues that we

---

[1] The PSI is not included in the appellate record.

should set aside the trial court's judgment revoking her community supervision, reinstate the original order of deferred adjudication, and order the trial court to proceed as if it had not granted the new trial. The State does not dispute that the trial court lacked authority to grant a new trial on its own motion, but it argues that we should overrule Appellant's issue for two reasons.

First, the State argues that Appellant is estopped from arguing that the judgment is void because she did not raise a void judgment complaint when she was placed on regular community supervision or when her community supervision was revoked, and she accepted the benefits of the judgment. A defendant placed on regular community supervision may raise issues relating to the conviction, such as evidentiary sufficiency, only in appeals taken when community supervision is originally imposed. *Manuel v. State*, 994 S.W.2d 658, 661-62 (Tex. Crim. App. 1999). An exception to this rule lies where the judgment is void. *Nix v. State*, 65 S.W.3d 664, 667 (Tex. Crim. App. 2001) *abrogated on other grounds by Wright v. State*, 506 S.W.3d 478, 482 (Tex. Crim. App. 2016). A void judgment is a nullity and can be attacked at any time. *Id.* at 668.

In this case, because the trial court lacked authority to grant a new trial on its own motion, its purported grant of a new trial was a void act, and the subsequent judgment of conviction placing Appellant on regular community supervision is a nullity. *See Perkins*, 738 S.W.2d at 280-81; *see also Zaragosa*, 588 S.W.2d at 326-27. Because the judgment of conviction is void, Appellant did not forfeit her complaint by failing to raise it in a direct appeal from the judgment. *See Nix*, 65 S.W.3d at 667-68.

Nonetheless, the State argues that Appellant accepted benefits from the judgment of conviction and is consequently estopped from now asserting her issue. Estoppel by judgment is a form of estoppel whereby a person who accepts the benefits of a judgment, decree, or judicial order is estopped from denying its validity or propriety and cannot reject its burdensome consequences. *Rhodes v. State*, 240 S.W.3d 882, 891 (Tex. Crim. App. 2007); *Deen v. State*, 509 S.W.3d 345, 349 (Tex. Crim. App. 2017). Here, citing *Rhodes* and *Deen*, the State argues that Appellant is estopped from complaining about the trial court's grant of a new trial because she accepted the benefits of the judgment of conviction placing her on community supervision. However, this case is distinguishable because, unlike the defendants in *Rhodes* and *Deen*, Appellant did not receive any benefit from the judgment of conviction.

In both **Rhodes** and **Deen**, the State used prior convictions to enhance the appellants' sentences, and the appellants argued on appeal that the prior convictions could not be used because they were void. **Rhodes**, 240 S.W.3d at 884; **Deen**, 509 S.W.2d at 346. In **Rhodes**, the appellant argued that his prior conviction was void because the sentence ran concurrently with other sentences although a statute required that it be cumulated with the sentences. **Rhodes**, 240 S.W.3d at 884. In **Deen**, the appellant argued that his prior conviction was void because the sentence of confinement was less than the statutory minimum. **Deen**, 509 S.W.2d at 346. In both cases, the court of criminal appeals held that the appellants were estopped from attacking the validity of the prior convictions because they accepted the benefits of the illegally lenient sentences. **Rhodes**, 240 S.W.3d at 892; **Deen**, 509 S.W.2d at 351.

In this case, the State argues that Appellant received a benefit from the judgment of conviction as well, namely community supervision as opposed to confinement. However, this is not the relevant comparison. Appellant entered into a plea agreement with the State for deferred adjudication community supervision, and the trial court approved it. The trial court subsequently illegally granted a new trial on its own motion, set aside the deferred adjudication order, found Appellant guilty, and placed her on regular community supervision. Unlike the illegally lenient sentencing in **Rhodes** and **Deen**, the court's illegal action here in no way benefitted Appellant. Thus, it cannot be said that Appellant accepted a benefit from the judgment of conviction, and she is not estopped from attacking its validity on appeal under a theory of estoppel by judgment. *See* **Rhodes**, 240 S.W.3d at 891; **Deen**, 509 S.W.2d at 3.

Next, the State argues that the trial court was within its discretion to set aside the deferred adjudication order because Appellant intentionally lied to the court about a matter it relied on in deciding to accept the plea agreement. The State cites no case upholding a trial court's setting aside of an already approved plea agreement under such circumstances, and we find none. However, we find some support for the theory that a court may properly act this way in some instances in **Perkins**. In **Perkins**, a defendant in a murder case made a plea bargain agreement with the state that provided his punishment would not exceed twenty-five years in prison. **Perkins**, 738 S.W.2d at 278. At the plea hearing, the defendant told the trial court that he was guilty of murder under the law of parties but did not shoot or stab anyone. **Id.** Thereafter, the trial court approved the plea agreement. **Id.** at 279. However, prior to the defendant's sentencing, the prosecutor informed the trial court that she spoke with a surviving victim of the

4

attack who stated the defendant directly participated in the stabbing. *Id.* at 279-80. Based on this new information, the trial court told the defendant it would not assess the agreed punishment of imprisonment for twenty-five years or less. *Id.* at 280. The defendant filed an application for writ of mandamus in the court of appeals. *Id.* The court of appeals issued the writ directing the trial judge to enforce the plea agreement. *Id.* The judge filed an application for writ of mandamus in the court of criminal appeals. *Id.* That court denied the judge's writ application, holding that the judge had a "mandatory, and non-discretionary duty . . . to specifically enforce the plea bargain agreement that was made by the parties and approved by him." *Id.* at 285.

However, the court of criminal appeals "pause[d] to point out" the following:

> [T]here is no evidence in the record before us of any fraud in the inducement on the part of [the defendant] or his attorney that might estop [the defendant] from seeking specific performance of the agreement he made with the prosecuting attorney. Had the record so reflected, then, of course, that might cause us to view the matter in a different light. However, as the court of appeals pointed out in its mandamus opinion that relates to this cause, " . . . the prosecutor made no effort to demonstrate for the record the truth of [the witness's hearsay statement that she had obtained after the defendant had entered his plea of guilty], and [the trial judge] acknowledged . . . that he did not know whether the statement was true.

*Id.* at 284. This language suggests that a defendant who fraudulently induces a trial court to accept a plea bargain agreement may later be estopped from seeking specific performance of the agreement.

Nonetheless, we similarly conclude that the State fails to show fraudulent inducement in this case. *See id.* As in *Perkins*, the State made no effort in the trial court to demonstrate for the record the elements of fraudulent inducement. *See id.* Those elements include the following: (1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on, and (5) which caused injury. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). Here, we cannot conclude that the record before us establishes a misrepresentation, or, if a misrepresentation was made, that it caused injury.

Although we find some evidence in the record supporting the misrepresentation element, that evidence is not sufficient to establish that there was a misrepresentation. *See id.* At the status hearing, after the trial court withdrew its approval of the plea agreement, the trial court asked Appellant whether she had fully considered the difficulty of successfully completing

regular community supervision as opposed to serving seven months in state jail. Appellant responded as follows:

> Your Honor, I have. And I can follow the rules. And I did have a slip. I did not intend to commit perjury.
>
> I understood you under—you underhand [sic] and agree with the PSI and will go forth to follow the rules of the probation set forth. It is a shame. I did have a very traumatic experience.
>
> I would have liked to be able to come and say, "Your Honor, I want to be honest and say I did have a drink."
>
> But then, like you said, I'd broken the rules,[2] and the—it's scary. Because I am not a person to lie. I try to do what is right.

It might be argued that these statements show Appellant believed she made a misrepresentation to the trial court by failing to disclose the previous day's alcohol consumption, or at least accepted responsibility for what the trial court perceived as a misrepresentation. However, these statements alone do not establish a misrepresentation, nor do they combine with other evidence in the record to establish a misrepresentation. The record shows that the trial court ordered a PSI, but the PSI is not included in the record. Therefore, we do not know the format or wording of the question regarding when Appellant last consumed alcohol. At the status hearing, the trial court stated, "[I]n the [PSI], you told us [your last alcohol use] was way back in November." However, we do not know when the PSI was completed or whether Appellant's answer was true or false at the time she answered the question. At the sentencing hearing, the trial court asked, "Does the defense have any proposed changes, corrections, additions or deletions?" But the court did not ask whether Appellant's answers changed since the PSI was completed. Based on this record, we cannot conclude that Appellant misrepresented her last alcohol use at the sentencing hearing by failing to assert that she consumed alcohol the previous day.

Furthermore, even if Appellant misrepresented the date of her last alcohol use, the record does not show that the misrepresentation caused injury, i.e., that it caused the trial court to accept the plea bargain agreement when it otherwise would not have. *See id.* Nothing in the record

---

[2] Presumably, the rules to which Appellant refers are her conditions of bond, which include an order not to consume alcohol.

shows whether the trial court would have accepted the plea agreement had it known that Appellant consumed alcohol the previous day. However, we find the trial court's statements regarding its reasons for setting aside the plea agreement relevant to this issue. These statements tend to show that the trial court's decision to set aside the plea agreement was related less to the fact that Appellant consumed alcohol the day before the sentencing hearing than the fact that she failed to disclose that information.

The following statements of the trial court tend to show that it decided to set aside the plea agreement, at least in part, because Appellant failed to disclose her recent alcohol use:

> Ms. Carroll, usually what I do when people have lied to me—if I don't find out fast enough, then my remedies are limited. But in this case, I have found out fast enough that we're still where I can set aside your probation that I granted to you.
>
> It's beyond me why people would lie to me in open court and trot right over to probation and then tell them something that they never revealed to us here in the courtroom.
>
> . . . .
>
> State want to offer two for five? State want a trial? I'm happy either way, but I'm not going to approve a deferred, when we start out with a defendant lying to us here in the courtroom.

On the other hand, the following statements of the trial court indicate that it decided to set aside the plea agreement in part because of its incomplete knowledge of Appellant's history:

> It really is an important issue, always—particularly important whenever you've got two DWIs under your belt—for the Court to be aware of everything that's going on with you.
>
> That's the reason—one of the reasons—that the Court granted a new trial, set aside your deferred adjudication probation earlier during the hearing, and set the case back as if none of that had happened.

These statements tend to show that the trial court relied on the information in the PSI, including Appellant's last alcohol use date, in deciding whether to accept the plea agreement. *See id.* However, to show fraudulent inducement so as to estop Appellant from seeking specific performance of the plea agreement, the State must show not only that the trial court relied on the alleged misrepresentation but also that the misrepresentation caused injury. *See id.* Because the record does not show that the trial court would not have accepted the plea agreement had it

known about Appellant's recent alcohol use, we cannot say that Appellant's misrepresentation of that fact, if any, caused injury.

Because the State fails to show all the elements of fraudulent inducement, we conclude that Appellant is not estopped from seeking specific performance of the plea agreement under a theory of fraudulent inducement. *See id.*; *Perkins*, 738 S.W.2d at 284.

In summary, the judgment revoking community supervision is void based on the trial court's lack of authority to grant a new trial on its own motion, and the State fails to show that Appellant is estopped from seeking specific performance of the plea bargain agreement under theories of estoppel by judgment and fraudulent inducement. Accordingly, we sustain Appellant's first issue. Because we conclude that the judgment revoking community supervision is void, and estoppel does not apply, we need not address Appellant's second and third issues regarding her time served credit and court costs. *See* TEX. R. APP. P. 47.1.

## DISPOSITION

Having sustained Appellant's first issue, we ***vacate*** the judgment revoking community supervision, ***reinstate*** the order of deferred adjudication, and ***remand*** the case to the trial court to proceed as if it had not granted a new trial.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered November 30, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 30, 2020**

**NO. 12-20-00051-CR**

**BROOKE ALLISON CARROLL,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-1152-18)

THIS CAUSE came to beard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this Court that the judgment of the trial court is void, it is ORDERED, ADJUDGED and DECREED by this Court that the judgment revoking community supervision be **vacated** and the order of deferred adjudication be **reinstated** and the cause **remanded** with instructions to proceed as if it had not granted a new trial in accordance with the opinion of this Court; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*